**UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

---

No. 25-3582

---

BRIAN CALLERY and TINA FASANO, Individually and on Behalf of All Others Similarly Situated,

*Plaintiffs-Appellees,*

vs.

HOP ENERGY, LLC,

*Defendant-Appellee,*

RYAN MELVILLE; MICHELLE MULLANEY; ROBERT MULLANEY; SCOTT MAWHINNEY,

*Objectors-Appellants.*

---

# OPENING BRIEF OF PLAINTIFFS-APPELLEES

---

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
Civil Action No.: 2:20-cv-03652-CMR
The Honorable Cynthia M. Rufe Presiding

---

**WUSINICH, SWEENEY & RYAN, LLC**
M. Frances Ryan
Edward C. Sweeney
102 Pickering Way, Suite 403
Exton, PA 19341
Email: mfrancesryan@wusinichsweeney.com
Email: esweeney@wspalaw.com
Phone: 610-594-1600
*Counsel for Plaintiffs-Appellee*

## TABLE OF CONTENTS


**I. STATEMENT OF THE ISSUES ........ 1**

**II. STATEMENT OF THE CASE ........ 1**

**A. Nature Of The Callery Class Action ........ 2**

**B. The Nature Of The New York Actions ........ 5**

**C. Overview Of Settlement Negotiations ........ 6**

**D. The Settlement And District Court's Approval Process ........ 8**

**III. STANDARD OF REVIEW ........ 12**

**IV. ARGUMENT ........ 13**

**A. The Settlement Did Not Violate NY Court Orders ........ 13**

**B. The Settlement Was Not A Reverse Auction ........ 14**

**C. The District Court Properly Applied Rule 23(a) and (b) ........ 16**

**1. The Court Properly Evaluated Adequacy of Counsel ........ 17**

**a. Class Counsel Is An Experienced Commercial Litigator ........ 17**

**b. There Are No Inherent Conflicts ........ 17**

**2. The District Court Properly Found Notice Was Adequate ........ 19**

**D. The District Court Properly Found That The Settlement Was Fair Under Rule 23(e) ........ 20**

**1. The District Court Correctly Found The Factors in *Girsh v. Jepson* Support Approval ........ 20**

**2. The Only Changes To The Settlement After Preliminary Approval Increased The Funds Available To The Class ........ 21**

**3. There Are No Uninjured Class Members ........ 22**

**4. The District Court Made Proper A Proper Factual Determination On HOP's Financial Condition And Did Not Commit Clear Error ........ 23**

**5. Range of Recovery Was Not Material To The Settlement Agreement 25**

**V. CONCLUSION ........ 26**

## TABLE OF AUTHORITIES

### Cases

*Girsh v. Jepson, 521 F.2d 153 (1975)* ....................20
*Grider v. Keystone Health Plan Cent. Inc.,* 500 F.3d 322 (3d Cir. 2007)....................13
*Hummel v. Wells Fargo Bank*, 2024 WL 5116797 (3d Cir. 2024) ....................15
*In re Community Bank of Northern Virginia*, 418 F.3d 277 (3d Cir. 2005.)....................14
*In re Community Bank of Northern Virginia, 622 F.3d 275 (2010)*....................18
*In re General Motors Corp. Pick-Up Truck Fuel Tank Products..., 55 F.3d 768 (1995)*....................17
*In re Prudential Ins. Co. America Sales Practice Litigation,* 148 F.3d 283 (3d Cir. 1998).................... 13, 15
*In re Wawa Inc. Data Security Litigation,* 141 F.4th 456 (3d Cir. 2025)....................12
*Larson v. AT&T Mobility, Inc.*, 687 F.3d 109 (3d Cir. 2012)....................16
*Negrete v. Allianz Life Ins. Co. of N. Am.,* 523 F.3d 1091 (9th Cir. 2008)....................13
*Reynolds v. Beneficial Nat. Bank,* 288 F.3d 277 (7th Cir. 2002) ....................14

### Rules

F.R.Civ.P. 23(a) and (b)....................16
Rule 23(e)....................20

## I. STATEMENT OF THE ISSUES

Whether the District Court abused its discretion in approving an insurance policy limits all cash settlement of $2.327 million where Plaintiff reasonably concluded that Defendant could not withstand a greater judgment, because it had secured debt of $124.5 million, far higher than any assets which could have been liquidated in bankruptcy, and therefore Class Counsel chose to make a decision that benefited the class with the policy limits versus exhausting the policy limits via continued litigation and risk that the class receive nothing due to a potential Chapter Eleven reorganization.

## II. STATEMENT OF THE CASE

This action, *Callery v. HOP Energy, LLC*, was the first filed and by far the largest, broadest and strongest of the heating oil class actions that were ultimately filed against HOP. There was no reverse auction. On the contrary, Objectors' Counsel unsuccessfully tried to thwart a reasonable settlement, mediated by Chief Judge James T. Giles (Ret.), that obtained for the class every penny that was available to fund a settlement. HOP was effectively insolvent and had secured debts of $124.5 million, versus hard assets worth $84 million. Appx 199. The only funds available were HOP's insurance policy, originally $5 million but reduced to approximately $4 million by August 2023 (when counsel first agreed to

explore mediation) due to defense costs. Appx 111. In fact, the amount available by the time the settlement was agreed in July 2024 by Class Counsel was much less than it should have been, because Objectors' Counsel refused to agree to stay discovery pending mediation so as to preserve the eroding insurance policy proceeds that were used to pay defense costs. Appx 112. Objectors' Counsel cost the class over $1 million that they forced HOP's insurance carrier to spend needlessly on defense costs between August 2023 and October 2024, while Class Counsel was trying to settle the case. Appx 368. The District Court correctly concluded that the settlement was fair and reasonable.

**A. Nature Of The Callery Class Action**

In June 2020 Class Counsel filed a class action complaint on behalf of Brian Callery, alleging that HOP Energy, LLC ("HOP") had engaged in a scheme to defraud its customers. Appx 51. HOP sold heating oil to retail customers under written contracts which contained the phrase "prevailing retail price." Appx 53. The complaint alleged that HOP had no intention of charging customers the actual "prevailing retail price" when called for under the contracts. Rather, HOP had created a false, inflated "Fake Retail Price" which bore no relation to the retail prices which HOP or other providers in the market actually quoted or charged for heating oil. Appx 54.

Plaintiff Brian Callery had discovered this fraudulent scheme when he signed a Capped Price heating oil contract with HOP, then attempted to purchase oil at prevailing retail prices after the market price of heating oil dropped precipitously due to the COVID-19 pandemic. Appx 53. Mr. Callery was charged his capped price, $2.099/gallon. *Id.* When Mr. Callery telephoned HOP, he was initially told that HOP's prevailing retail price for heating oil was $1.55/gallon. *Id.* When Callery demanded to know why he was charged $2.099/gallon instead of $1.55/gallon, HOP's representatives transferred his call to someone who told him that the prevailing retail price for Capped Price customers on that day was $2.49/gallon. That representative told Callery that the sales department did not know what the prevailing retail price of oil was. *Id.* The $2.49 price represented a secret Fake Retail Price that HOP only revealed when customers inquired why they were being charged more than the retail price HOP quoted on its website and over the phone. HOP maintained these secret Fake Retail Prices so it could use them as an excuse when it overcharged customers who were entitled to be charged the Prevailing Retail Price, also known as the Variable Price. Appx 54.

The *Callery* action alleged breach of contract, fraud and violation of the consumer protection laws of Pennsylvania, New York, and the other states where HOP did business. Appx 58-61. The remedies sought included statutory treble damages, statutory minimum damages, attorneys' fees and punitive damages. *Id.*

Callery's theory was that HOP knowingly and intentionally misled customers about its secret meaning for the phrase "prevailing retail price" and thus knowingly and intentionally overcharged customers whose contract entitled them to purchase oil at the "prevailing retail price." The class defined in the Callery complaint was:

> All persons who entered into contracts with defendants for the delivery of heating oil to a residence, under terms including a capped pricing program and/or a prevailing retail price for the price of heating oil, and who received delivery of heating oil during the time period commencing six years before the filing date of this action.

Appx 54.

Class Counsel learned in discovery that virtually all of HOP's contracts during the relevant time period included the phrase "prevailing retail price" and therefore all of HOP's customers from June 2014 to the present were potential class members. Appx 740-41. Class Representative Tina Fasano sought out Class Counsel in December 2022 to participate as a Lead Plaintiff and provided discovery used in the mediation before Judge Welsh. Appx 111. Fasano had a Variable Price claim, while Callery had a Capped Price claim. Appx 284. Class Counsel believed and alleged that HOP's fraudulent scheme was based on identical communications made to the class members, on HOP's website and in the contracts themselves. Appx 52-54. Thus, the fraudulent scheme would be easy to prove on a class basis, because every class member received and signed contracts with the deceptive contractual language.

**B. The Nature Of The New York Actions**

On December 6, 2021, Objectors' Counsel filed *Melville v. HOP Energy, LLC* in the Southern District of New York. *Melville* alleged breach of contract and breach of the covenant of fair dealing claims. Appx 432. There was no fraud claim and no claim for violation of consumer protection laws. *Id.* The proposed *Melville* class alleged claims on behalf of customers whose contracts required HOP to sell oil at "Promotional Prevailing Retail Price for First Year Customers." Appx 432. Class Counsel learned in discovery that this language was only used in a tiny number of HOP contracts in Connecticut, thus the *Melville* class was extremely small. Appx 741. All members of the proposed *Melville* class are also members of the Callery class, as their contracts include the term "prevailing retail price." Appx 432.

In August 2023, <u>three years</u> after Callery was filed, Objectors' Counsel filed *Mullaney v. HOP Energy, LLC.* Appx 433. *Mullaney* was a nearly pure copycat case of *Callery*, seeking to represent customers whose variable, non-capped price was set by reference to the term "prevailing retail price." Appx 433. *Mullaney* did not include statutory consumer fraud claims or a fraud claim, and thus the remedies sought were far less than in *Callery*. All members of the proposed *Mullaney* class were also members of the proposed *Callery* class, but the *Callery* class was much larger because it included customers from 2014 to the present, and Capped Price

contract customers as well as Variable Price customers. *Mullaney* only included Variable Price customers. Appx 433 (describing *Mullaney* as including "non-capped price" customers).

**C. Overview Of Settlement Negotiations**

At the time Class Counsel and HOP began to discuss mediation, in late Summer 2023, Objectors' Counsel were pursuing a very limited class action filed in December 2021 and a newly filed copycat action that was similar to, but much more limited than, the Callery action in the Eastern District of Pennsylvania. Appx 111. When Class Counsel and HOP agreed to enter mediation, they invited Objectors' Counsel to participate. Appx 300. When HOP notified the parties that it was in a weak financial position and that its' insurance policy was eroded to only $4 million due to the costs of defense, Class Counsel agreed to stay merits discovery in favor of voluntary discovery in aid of mediation. Objectors' Counsel refused and insisted on costly merits discovery. Appx 111-112, 680. As it is very common to stay merits discovery when there is a limited and eroding amount of money available to pay defense costs and settlement, it was obvious that the only reason Objectors' Counsel were refusing to agree to the stay is so that they could bill hours to the newly filed case and "catch up" to Class Counsel for the purpose of dividing up any fee which might eventually be awarded.

Objectors' Counsel refused to agree to a reasonable settlement in the mediation proceedings before the Hon. Diane Welsh (ret.) and as a result an impasse was reached before Judge Welsh. Appx 113.

HOP's financial condition deteriorated further, to the point where in May 2024 HOP's revolving line of credit became overdrawn in the amount of $6.5 million, resulting in a forbearance agreement with stringent liquidity and reporting requirements for HOP. Appx 197. An agreement was reached under which HOP's long term lender, TCW, paid the revolving lender overdraft of $6.5 million, and HOP's private equity owner turned over control of the company to HOP's secured lender. *Id.* While HOP's private equity owner had been willing to contribute to a settlement during the mediation before Judge Welsh, that potential contribution vanished when the private equity owner withdrew and left HOP to its secured creditor TCW. TCW, as a secured lender, had priority over the unsecured claims of the Class in any bankruptcy proceeding. At that point, there was no money available to fund a settlement beyond the insurance policy's proceeds, which were rapidly eroding due to Objectors' Counsel's actions. Appx 114. HOP informed Class Counsel that it was considering filing for Chapter Eleven reorganization, under which the class would receive nothing because the secured lenders had priority. Appx 114.

HOP and Class Counsel agreed to attempt to mediate without Objectors' Counsel's participation, and the Hon. Edward Giles, former Chief Judge of the Eastern District of Pennsylvania, agreed to mediate. Appx 300. Class Counsel obtained extensive financial information from HOP, including audited financials. Appx 113-14. Class Counsel retained a forensic accountant, Michael Breon, who issued a report stating that HOP's secured debts far exceeded any assets that could be liquidated in bankruptcy. Appx 113. In a mediation meeting on June 6, 2024, presided over by Judge Giles, the parties reached an agreement in principle to settle the class action for the remaining policy limits, less a setoff for defense costs to be incurred in obtaining approval, and in continuing to defend the New York copycat actions. Appx 114. Class Counsel agreed to the settlement because they believed that due to Objectors' Counsel's actions, the remaining proceeds of HOP's insurance policy would be eaten up by defense costs, and there would be no money available to pay a judgment or settlement, due to the priorities in the bankruptcy code. Appx 114.

**D. The Settlement And District Court's Approval Process**

The proposed settlement is a non-reversionary common fund settlement where Class Members who are known to Defendant will receive payments without being required to submit a claim form, under a formula recommended by Plaintiffs'

experts at North American Forensic Accounting, LLC ("NAFA"). Appx 114-15, 120. The settlement distribution formula takes account of the volume of heating oil the Class Member purchased, and the nature of the allegedly wrongful pricing scheme the Class Member was allegedly victimized by, Capped Price, Rollover, or Promotional Prevailing Retail Price. The amount of the common fund is $2,327,530. Appx 135. This represents the entire amount remaining of the insurance policy which covers the defense of this action and *Melville* and *Mullaney*. Appx 114. Because of HOP's weakened financial condition, it was unable to contribute funds beyond the insurance policy's remaining proceeds. Members of the putative classes in *Melville* and *Mullaney* are also Class Members in *Callery* and will share in the common fund settlement on the same basis as other customers of HOP. Fixed price customers who bought oil based on a contractually fixed price were not included in the settlement class, because they were not injured. Appx 844. Likewise, cash or COD price customers were not included in the settlement class, because they were not injured. *Id.* The amount of the payments varies based on the nature of the customer's contract terms and the amount of oil the customer purchased. Appx 114-15, 141-44.

The single most important factor in approving the Settlement was HOP's inability to pay more, based on HOP's indisputable staggering level of secured debt, which would be ahead of the Class in any Chapter 11 reorganization. In

Class Counsel's Motion For Preliminary Approval, Class Counsel submitted a sworn declaration attaching the detailed report of forensic accountant Michael Breon, CPA. Appx 111, 184-219. Mr. Breon examined the financial condition of HOP, including examining audited and unaudited financial reports. Mr. Breon's report described all of the factors leading him to conclude that HOP's financial condition was weak, including, most importantly, HOP's cost of debt. Appx 195. Mr. Breon explained in detail how HOP's "interest expense has increased year over year as interest rates have increased along with the amount of debt. In an industry with low profit margins, such a high cost of debt can cause financial hardship and bankruptcy." Appx 195.

HOP's balance sheet included both tangible assets and intangible assets, e.g. know-how, customer lists, and good will. Mr. Breon's report explained the importance of excluding intangible assets in assessing the financial health of a company like HOP that deals primarily with physical goods and tangible assets. Appx 193. "Excluding intangibles offers a more conservative view of the company's asset base, focusing in tangible assets that have more predictable and realizable values. This can provide a clearer picture of a company's ability to cover its debts with its more stable and liquid assets." Appx 193. In assessing HOP's financial condition, Mr. Breon explained that the 2022 acquisition of Rycor

placed a large amount of **intangible assets** on HOP's books, as opposed to tangible assets which could be liquidated in a bankruptcy proceeding. Appx 196-98.

The bottom line of Mr. Breon's report was that as of April 30, 2024 HOP had secured debt of $39 million (revolving line of credit) plus $85.5 million (long term debt) for a total of $124.5 million in debt that would have priority in any bankruptcy proceeding. As of that date HOP had $84 million in assets less goodwill and intangible assets. Appx 199. Because of this secured debt, "it would be inconceivable that class members would receive any damages under a bankruptcy scenario." Appx 199.

The District Court held a fairness hearing in April 2025. In the fairness hearing the District Court questioned Class Counsel at length about every factor the Court needed to consider in deciding whether to approve the settlement. Appx 817-863. On December 1, 2025 the Court issued an extensive thirty-six page opinion making findings on questions of law and fact and approving the settlement.

Most significantly, the District Court correctly considered and ruled on the most significant piece of evidence supporting the settlement: Class Counsel's forensic accounting expert's report showing that Defendant could likely not pay a larger settlement due to its staggering secured debt, far in excess of its assets. The only alternative to the settlement the District Court approved was Defendant's secured lenders taking full ownership of Defendant's assets in a Chapter 11

bankruptcy reorganization, and paying the Class nothing. While Defendant has not filed for Chapter 11, the equity owners turned over control to the secured lender TCW without requiring any bankruptcy filing.

Appellants complain that the Court did not make determinations "by a preponderance of the evidence" regarding supposedly disputed facts concerning HOP's ability to withstand a greater judgment. In fact, the Court evaluated Appellants' argument in this respect and found "The Court is satisfied with Plaintiff's and HOP Energy's representations regarding HOP Energy's financial situation such that the present settlement is a result of legitimate concerns about ability to withstand a greater judgment." Opinion at 32. "The Court is satisfied that HOP Energy's financial situation reasonably supports Plaintiffs assertions that HOP Energy could not withstand a greater judgment without jeopardizing class members' potential recovery." Opinion at 32-33. These findings of fact are subject to review under the clear error standard. There is no basis in the record to overturn the Court's findings that HOP's financial situation raised legitimate concerns about its ability to withstand a greater judgment.

## III. STANDARD OF REVIEW

The District Court's factual findings are subject to a clear error standard of review. *In re Wawa Inc. Data Security Litigation,* 141 F.4th 456, 470 (3d Cir.

2025). The District Court's decision to approve the settlement is subject to an abuse of discretion standard of review. *In re Prudential Ins. Co. America Sales Practice Litigation,* 148 F.3d 283, 299 (3d Cir. 1998).

## IV. ARGUMENT

Objectors' main arguments on appeal are that the Settlement violated New York court orders, and it was a reverse auction. Both arguments are plainly wrong.

### A. The Settlement Did Not Violate NY Court Orders

Objectors argue that the Settlement should be overturned because the parties violated an interim class counsel order issued by Magistrate Judge Resnick in *Melville.* Judge Resnick herself ruled that her order was not violated, and Judge Karas agreed. While Objectors' Counsel asked the New York Court to sanction Defense Counsel for allegedly violating the Interim Class Counsel order, Judge Resnick noted that that order did not specifically prohibit Defense Counsel from negotiating a settlement in Callery. Appx 274. Judge Resnick noted that federal courts do not have the power to enjoin settlement discussions in other federal courts. Appx 271 (citing *Grider v. Keystone Health Plan Cent. Inc.,* 500 F.3d 322, 330 (3d Cir. 2007) (vacating injunction against defendants attempting to settle claims pending in federal district court in Florida) (collecting cases); *Negrete v. Allianz Life Ins. Co. of N. Am.,* 523 F.3d 1091, 1099 (9th Cir. 2008) (reversing

district court decision to enjoin parties from participating in a settlement in another federal court). District Judge Karas rejected Objectors' Counsel's appeal from Judge Resnick's order. *Melville v. HOP Energy LLC*, Dkt. No. 21-cv-10406, Doc. No. 169.

The idea that the court in the S.D.N.Y could impede the parties in the lower Court's ability to settle this action before the insurance proceeds were eroded away is not well-founded. A Magistrate Judge in New York does not have the authority to issue orders affecting a case before a District Judge in Pennsylvania.

**B. The Settlement Was Not A Reverse Auction**

Objectors argue that the Settlement was a "reverse auction," one in which the defendant cut out all but the most ineffectual class lawyers to negotiate a weak settlement. This Court has questioned settlements as possible reverse auctions where class counsel has urged class settlement at a low figure in exchange for "red carpet treatment on fees." *In re Community Bank of Northern Virginia*, 418 F.3d 277, 308 (3d Cir. 2005.) Typically in a reverse auction, the defendant will essentially bribe one plaintiff's counsel, usually with a copycat, later filed case, with a large fee paid out of its own pocket to settle all claims, including other pending class actions. *See*, *e.g., Reynolds v. Beneficial Nat. Bank,* 288 F.3d 277 (7th Cir. 2002).

In this case, Class Counsel did not strike any deal on fees, let alone a deal to receive red carpet treatment on fees. The Settlement Agreement provides that any fees and costs will be awarded by the Court, out of the Settlement Fund, with a cap of one third. Appx 145. HOP agreed that it "will take no position regarding the Fee and Expense Application." Appx 145.

The District Court rejected the reverse auction argument, finding that "There was no reverse auction or nefarious action resulting in this settlement. All parties engaged in global settlement negotiations, they did not come to an agreement, and Plaintiffs and Defendant subsequently came to this settlement through mediation." Appx 35. The District Court's ruling is a factual one subject to review only for clear error. *In re Prudential Ins. Co. America Sales Practice Litigation,* 148 F.3d at 299. Far from being a "weak settlement," Class Counsel obtained for the Class every penny that was available to fund a settlement. It is an all cash settlement, with no coupons, vouchers or gift cards. It is pure fantasy to suggest that the Class might have achieved more if HOP had gone into Chapter 11 reorganization: TCW, the secured lender, was owed over $124.5 million, far more than HOP's liquid assets. *See Hummel v. Wells Fargo Bank*, 2024 WL 5116797, *1 (3d Cir. 2024) (objections to class action settlement must not be based on fantasy). The Class would have received nothing in bankruptcy.

This case represents the opposite of a reverse auction. Counsel for the largest, strongest and first filed class action, Callery, agreed to go to mediation. The Defendant then invited Objectors' Counsel to participate in mediation, even though their much smaller copycat case had just recently been filed. The District Court made a factual finding that "Because interim counsel turned down any global settlement agreements before Judge Welsh, Plaintiffs and Defendants engaged in mediation before Judge Giles and came to the present settlement agreement." Appx 34. Objectors' Counsel had a full and fair opportunity to participate in settlement discussions. This Court has noted that it is not an abuse of discretion for a district court to reject allegations of reverse auction, where the settlement was the product of months of negotiations mediated by a retired federal judge, the settlement was fair, reasonable and adequate, and there is no evidence of collusion. *Larson v. AT&T Mobility, Inc.*, 687 F.3d 109, n. 18 (3d Cir. 2012).

**C. The District Court Properly Applied Rule 23(a) and (b)**

The District Court analyzed the factors in F.R.Civ.P. 23(a) and (b) and found that those factors were met. Appx 16-35 (finding numerosity, typicality, and adequacy of representation). On appeal, Objectors challenge only adequacy and notice. Objectors have not shown that the District Court abused its discretion in finding adequacy and notice.

### 1. The Court Properly Evaluated Adequacy of Counsel

#### a. Class Counsel Is An Experienced Commercial Litigator

Class Counsel is an experienced commercial litigator who graduated from the University of Chicago Law School with honors in 1991, clerked for Judge Van Antwerpen and was elected an equity partner at Dechert, before joining her current firm in 2020. Appx 117. Objectors object to her because she has not been lead counsel for a plaintiff in a class action, having spent much of her career on the defense side. Objectors cite no authority for the proposition that gaining experience on the defense side disqualifies an experienced commercial litigator from representing a class. The District Court concluded that gaining experience on the defense side does not make Class Counsel inadequate. Appx 841.

#### b. There Are No Inherent Conflicts

Objectors argue that Class Counsel had an inherent conflict with the Class. The District Court applied the correct legal standards in analyzing adequacy of counsel, finding no conflict of interest. There is no evidence to support a finding that the District Court abused its discretion in finding adequacy of counsel. Objectors cite *In re General Motors* for the proposition that a court may not presume that putative class counsel "actively represent the absentees' interest." That court merely cautioned that the approving court needs to "monitor the negotiation process itself to assure that both counsel and the settlement adequately

vindicate the absentees' interest." 55 F.3d at 791. That is exactly what the District Court did in this case. The District Court did not blindly accept Class Counsel's assurance that the settlement was fair. Rather, the Court conducted an extensive fairness hearing, questioned every aspect of the settlement, and wrote a thirty-six page opinion evaluating every appropriate factor.

In *In re Community Bank of Northern Virginia*, cited by Objectors in their brief, the error made by the district court was to disregard an inherent conflict between the named plaintiff, whose claims were timely, and absent class members, against whom a statute of limitations defense might be asserted. 622 F.3d 275, 297 (2010). That ruling has nothing to do with this case. There was no conflict in this case between the named plaintiffs and absent plaintiffs. The court below applied the correct legal standards.

Objectors cite Class Counsel's filing of a RICO complaint relating to the claims made in this action. That suit was voluntarily withdrawn without prejudice in December 2023, at HOP's request, in order to facilitate the mediation before Judge Welsh. Six months went by after the withdrawal of the RICO complaint before this action was settled during a mediation before Judge Giles in June 2024. Appx 114. There was simply no connection between the two events. Objectors' fantasy that Class Counsel felt pressure to settle without Objectors' Counsel because of the RICO complaint is belied by the fact that global negotiations were

underway in December 2023 and continued for months, with Objectors' Counsel fully participating, until an impasse was reached before Judge Welsh. Only after the impasse, and after HOP went into forbearance with its revolving creditor, did HOP and Class Counsel renew mediation before Judge Giles. As the District Court noted, Objectors fail to provide any legal or factual support for their clam that the RICO filing created an inherent conflict. Appx 21.

The District Court correctly rejected Objectors' other claims regarding Class Counsel's adequacy. Appx 19-26. The District Court's factual findings on adequacy may not be overturned absent clear error, which Objectors have not even tried to show.

### 2. The District Court Properly Found Notice Was Adequate

The District Court examined all of the claimed issues regarding the notice to the Class and found that the notice was adequate. Objectors provide no basis to find that the District Court abused its discretion in approving the notice. Each of Objectors' complaints about the notice are minor quibbles or just plain improper. For example, the notice summarized the allocation formula which was recommended by Class Counsel's expert mathematician. Appx 114-15, 164-75. Objectors point to minor, immaterial language differences between the summary and the actual Settlement Agreement. First, the Settlement Agreement was published on the settlement web site established as part of the notice to the class,

so any interested class member could see the exact language of the allocation formula for themselves. https://www.heatingoilclassaction.com/case-documents.aspx. Second, the District Court correctly found that the language in the notice was adequate:

> Rule 23(c)(2) does not require exact details of how settlements will be calculated and distributed, nor does it require notice to class members of the reasoning for coming to a settlement.

Appx 37. The District Court considered and rejected Objectors' complaints about the notice in a detailed analysis. Appx 36-38.

Objectors have provided no basis to find that the District Court abused its discretion in approving the Notice.

### D. The District Court Properly Found That The Settlement Was Fair Under Rule 23(e)

#### 1. The District Court Correctly Found The Factors in *Girsh v. Jepson* Support Approval

The District Court carefully analyzed the nine *Girsh* factors. Appx 39-44. The primary factors supporting the settlement were: Arm's length negotiation before Judge Giles; payment to class members without requiring a claim form; risk of continuing litigation; and most importantly, HOP's weak financial position. *Id.* "Because the class members are unsecured creditors with unliquidated claims, reorganization or liquidation could leave them with potentially no method of

recovery because HOP Energy has a secured debt of $120 million." Appx 42. The District Court closely examined the allocation formula in the Settlement Agreement and concluded that "The settlement treats class members equitably relative to each other." Appx 44.

### 2. The Only Changes To The Settlement After Preliminary Approval Increased The Funds Available To The Class

Objectors complain that the terms of the settlement changed after preliminary approval and therefore it should be held void. However, this change, agreed to by Defendant and Class Counsel, is immaterial to the fairness analysis, because the only change was to increase the amount payable to the Class. While the original settlement agreement allowed HOP's ongoing defense costs to be paid out of its insurance policy proceeds, even after the proceeds were paid into the Court-controlled settlement fund, Class Counsel persuaded HOP to waive this provision. As a result, hundreds of thousands of dollars that could have been used to pay HOP's defense costs were restored to the Class. Objectors cite no law that precludes a defendant from waiving its rights under a settlement agreement in a way that provides a significant financial benefit to the class. This is not a legal basis to overturn the District Court's approval of the settlement.

### 3. There Are No Uninjured Class Members

Objectors complain that uninjured class members should have been excluded from the Class. The Court questioned Class Counsel extensively at the Fairness Hearing and reached a factual conclusion that there were no uninjured class members. Appx 844, 921 (Hearing) and 32-33 (Opinion). The Court's finding may only be set aside for clear error, which Objectors have failed to show.

Secondly, Objectors' argument relies on mischaracterizations of statements Class Counsel made at the very beginning of the case, in briefing a motion for remand, when pressing the Defendant for proof that the amount in controversy was sufficient to support removal under the Class Action Fairness Test. Class Counsel's statements are not in the record, rather Objectors cite to their own brief, which mischaracterized the statements. Appellant's Brief at 31. In those statements, Class Counsel demanded proof from the Defendant, which had the burden of proving jurisdiction, regarding how much the damages were. This strategy paid off, because early discovery provided by HOP turned out to be the key to proving the scheme to defraud customers which was the basis for Class Counsel's theory of liability: the Fake Retail Price. Class Counsel never said that there were many uninjured class members.

The District Court conducted extensive analysis and concluded: "Accordingly, the class does not exclude uninjured class members because there

are no uninjured class members." Appx 33. This factual finding is subject to review only for clear error, and Objectors have failed to identify any clear error.

The reason why the District Court found that there were no uninjured class members is that Class Counsel excluded from the Class any HOP customers who paid for oil on a cash price or fixed price basis. Appx 843-44. All remaining HOP customers, i.e. the Class, were subjected to HOP's alleged deceptive trade practices, namely the Fake Retail Price scheme. Appx 921. Every class member was deceived into thinking that if they purchased heating oil from HOP on a given day, they would be charged HOP's prevailing retail price for heating oil, if applicable under their contracts, not the Fake Retail Price HOP invented to overcharge customers. Every class member was deceived by this scheme in every heating oil purchasing decision they made – whether to buy or not to buy heating oil on a particular day.

#### 4. The District Court Made Proper A Proper Factual Determination On HOP's Financial Condition And Did Not Commit Clear Error

Class Counsel retained a forensic accountant to examine HOP's financial condition and issue a report. Appx 113, 185-233. The District Court examined that report and made a factual determination that HOP's weak financial condition supported approval of the settlement. Appx 42.

Appellants complain that the Court did not make determinations "by a preponderance of the evidence" regarding supposedly disputed facts concerning HOP's ability to withstand a greater judgment. It is not the law that a District Court must use any magic language in rendering its factual determinations, like "by a preponderance of the evidence." In fact, the Court evaluated Appellants' argument in this respect and found "The Court is satisfied with Plaintiff's and HOP Energy's representations regarding HOP Energy's financial situation such that the present settlement is a result of legitimate concerns about ability to withstand a greater judgment. Appx 42. "The Court is satisfied that HOP Energy's financial situation reasonably supports Plaintiffs assertions that HOP Energy could not withstand a greater judgment without jeopardizing class members' potential recovery. Appx 42-43.

The District Court's factual findings are subject to clear error review. Objectors did not provide the District Court with <u>any</u> evidence to contract Mr. Breon's analysis of HOP's financial condition. Instead, they speculate that because HOP had high revenues, surely it could have paid more in a settlement. Firstly, revenues are not profits, and they bear no relation to HOP's ability to pay after making required payments to its secured creditor, TCW. More importantly, this argument ignores the reality of the situation: As of May 2024, HOP is controlled by its secured lender, which has no incentive to contribute any portion

of HOP's revenues or assets to a settlement with the Class, because it could easily extinguish the Class's unsecured claims by running HOP through a Chapter 11 reorganization. This is like arguing that a homeowner who is underwater on her mortgage can simply sell the home to settle a claim against her: She can't because she doesn't own the home, the secured lender does.

### 5. Range of Recovery Was Not Material To The Settlement Agreement

Objectors complain that Class Counsel did not provide the District Court with the class members' potential range of recovery. This was because the settlement was based on HOP's inability to withstand a judgment, not based on an assessment of what the class members could have been awarded at trial. It is undisputed that a trial award (as opposed to recovery) could have been in the range of $80 million or more; however, Defendant has consistently defended against the allegations of misconduct and argued that it had the express discretion to set and change its oil pricing under its various contracts. Thus, success at trial was no guarantee in any event. But an $80 million verdict is useless when the defendant is insolvent: It is by definition <u>not a recovery</u>, merely a scalp the lawyer can hang on his wall or website. Class Counsel was interested in maximizing the actual recovery for each class member, not a big number to brag about that could never be collected.

The District Court determined, in its discretion, that it did not need detailed damages calculations in order to conduct a fairness inquiry, because "fairness of a settlement is based not just on the value of plaintiffs' claims, but also on the Defendant's ability to withstand a greater judgment." Appx 24. The District Court also rejected Objectors' claim that Class Counsel should have provided information on the *Melville* case to the Court or class members. Appx 24. There is simply no legal support for the idea that class members need to be informed about the existence of later-filed, less expansive cases in other districts.

## V. CONCLUSION

Objectors have not shown that the District Court abused its discretion in approving the Settlement. Accordingly, the District Court's decision should be affirmed.

WUSINICH, SWEENEY & RYAN, LLC

Date: 4/23/2026

BY: */s/ M. Frances Ryan*

Edward C. Sweeney
M. Frances Ryan
102 Pickering Way, Suite 403
Exton, PA 19341
(610) 594-1600
esweeney@wspalaw.com
mfrancesryan@wusinichsweeney.com
*Counsel for Plaintiffs-Appellees*

## CERTIFICATION OF ADMISSION TO BAR

I, M. Frances Ryan, certify as follows:

1. I am a member in good standing of the bar to the United States Court of Appeals for the Third Circuit.

2. Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 28.1(e)(B) of the Federal Rules of the Appellate Procedure, I hereby certify that, according to the word-count feature of Microsoft Word 2022-word processing program, this Brief contains 5,824 words and is therefore in compliance with the type-volume limitations set forth in Rule 28.1(e)(B).

## CERTIFICATION OF IDENTICAL COMPLIANCE OF BRIEFS

I hereby certify that the text of the Plaintiff-Appellee's electronic brief and hard copies are identical.

## CERTIFICATION OF VIRUS CHECK COMPLIANCE

I hereby certify that a virus check was performed on Plaintiff-Appellee's Brief using McAfee LiveSafe.

**CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that on April 23, 2026, a true and correct copy of the foregoing Opening Brief of Plaintiffs-Appellees was electronically filed through the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: April 23, 2026

*<u>/s/ M. Frances Ryan</u>*
M. Frances Ryan

WUSINICH, SWEENEY & RYAN, LLC

Date: 4/23/2026

BY: */s/ M. Frances Ryan*
M. Frances Ryan
Edward C. Sweeney
102 Pickering Way, Suite 403
Exton, PA 19341
(610) 594-1600
*esweeney@wspalaw.com*
*mfrancesryan@wusinichsweeney.com*
*Attorneys for Plaintiffs-Appellees*