**No. 25-3582**

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE THIRD CIRCUIT**

BRIAN CALLERY AND TINA FASANO, Individually and on Behalf of All Others Similarly Situated,

*Plaintiffs-Appellees*,

v.

HOP ENERGY, LLC,

*Defendant-Appellee*,

RYAN MELVILLE; MICHELLE MULLANEY; ROBERT MULLANEY; SCOTT MAWHINNEY

*Objectors-Appellants*.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 20 Civ. 3652
Hon. Cynthia M. Rufe Presiding

**REPLY BRIEF FOR APPELLANTS RYAN MELVILLE, MICHELLE MULLANEY, ROBERT MULLANEY, AND SCOTT MAWHINNEY**

**WITTELS MCINTURFF PALIKOVIC**
Daniel J. Brenner
J. Burkett McInturff
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
djb@wittelslaw.com
jbm@wittelslaw.com

**SHUB & JOHNS LLC**
Jonathan Shub
Samantha E. Holbrook
FOUR TOWER BRIDGE
200 BARR HARBOR DRIVE, SUITE 400
CONSHOHOCKEN, PA 19428
Telephone: (610) 477-8380
jshub@shublawyers.com
sholbrook@shublawyers.com

*Counsel for Appellants*

# TABLE OF CONTENTS

INTRODUCTION ..... 1

ARGUMENT ..... 2

I. HOP and Callery's Counsel Do Not Dispute That the District Court Triggered the Agreement's Poison Pill ..... 2

II. The Settlement Violated Another Federal Court's Order ..... 3

A. Neither HOP Nor Callery's Counsel Present a Plausible Interpretation of the *Melville* Order ..... 3

B. The District Court Advanced a New and Improper Rule that Enables Courts to Ignore Other Courts' Rule 23 Orders ..... 5

III. The Settlement Was a Reverse Auction ..... 6

A. The District Court Failed to Weigh Evidence of a Reverse Auction ..... 6

B. The District Court's Limited Factual Findings Were Clearly Erroneous ..... 9

C. Callery's Counsel's Counterarguments Fail ..... 10

IV. The District Court Improperly Presumed Callery's Counsel's Adequacy ..... 12

A. The District Court Applied an Incorrect Legal Standard ..... 12

B. Callery's Counsel Are Inadequate ..... 14

V. Post-Notice Modifications Violated Due Process and Rule 23(e) ..... 16

VI. Callery's Counsel Refused to Exclude Uninjured Capped Price Customers from the Class ..... 19

VII. Class Notice Was Defective ..... 22

VIII. HOP's Claimed Inability to Pay Does Not Relieve Callery's Counsel of Their Obligation to Prove the Settlement's Fairness ..... 23

IX. The District Court Failed to Weigh Evidence Regarding HOP's Ability to Pay ....................25

CONCLUSION ....................28

# TABLE OF AUTHORITIES

**Cases**

*Abramson v. Agentra, LLC*,
2021 WL 3370057 (W.D. Pa. Aug. 3, 2021)........................................................24

*Bell v. Gateway Energy Servs. Corp.*,
No. 31168/2018, NYSCEF No. 152 (N.Y. Sup. Ct. Feb. 25, 2021)....................11

*Bennett v. Schnader Harrison Segal & Lewis LLP*,
2026 WL 202548 (E.D. Pa. Jan. 22, 2026) ..........................................................24

*BLT Steak LLC v. Liberty Power Corp, LLC*,
No. 151293/2013, NYSCEF No. 376 (N.Y. Sup. Ct. Aug. 14, 2020).................11

*Brooks v. Ga. State Bd. of Elections*,
59 F.3d 1114 (11th Cir. 1995)..............................................................................17

*Claridge v. N. Am. Power & Gas, LLC*,
No. 15 Civ. 1261, 2016 WL 7009062 (S.D.N.Y. Nov. 30, 2016)........................11

*Dutch v. IKEA US Retail LLC*,
343 F.R.D. 296 (E.D. Pa. 2022)...........................................................................21

*Ehrheart v. Verizon Wireless*,
609 F.3d 590 (3d Cir. 2010)....................................................................................2

*Girsh v. Jepson,*
521 F.2d 153 (3d Cir. 1975) .................................................................................24

*Grider v. Keystone Health Plan Ctr., Inc.*,
500 F.3d 322 (3d Cir. 2007)....................................................................................4

*Huber v. Simon's Agency, Inc.*,
84 F.4th 132 (3d Cir. 2023)...................................................................................20

*In re Baby Prods. Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013) .................................................................................23

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011).................................................................................10

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) .......................................................................... 12, 13

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
934 F.3d 316 (3d Cir. 2019)............................................................................ 8, 27

*In re Hydrogen Peroxide Antitrust Litig.*,
552 F.3d 305 (3d Cir. 2008), as amended (Jan. 16, 2009) ..................................26

*In re Literary Works in Elec. Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011) ...........................................................................16

*In re Nat'l Football League Players' Concussion Inj. Litig.*,
961 F. Supp. 2d 708 (E.D. Pa. 2014)...............................................................24

*Johnston v. HBO Film Mgmt., Inc.*,
265 F.3d 178 (3d Cir. 2001)............................................................................11

*Kamal v. J. Crew Grp., Inc.*,
918 F.3d 102 (3d Cir. 2019)............................................................................21

*Larson v. AT & T Mobility LLC*,
687 F.3d 109 (3d Cir. 2012)..............................................................................9

*Lewis v. Ford Motor Co.*,
263 F.R.D. 252 (W.D. Pa. 2009)......................................................................21

*Mey v. Patriot Payment Grp., LLC* ,
2016 WL 11501481 (N.D. W. Va. Jan. 5, 2016) ..................................................8

*Mirkin v. XOOM Energy, LLC*,
No. 18 Civ. 2949, 2023 WL 5622099 (E.D.N.Y. Aug. 31, 2023) ........................11

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
523 F.3d 1091 (9th Cir. 2008)............................................................................4

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) .......................................................................................16

*Smith v. Bayer Corp.*,
564 U.S. 299 (2011) .........................................................................................5

*Sorace v. Wells Fargo Bank, N.A.*,
2024 WL 5116797 (3d Cir. Dec. 16, 2024) .......... 9

*Sourovelis v. City of Philadelphia*,
515 F. Supp. 3d 321 (E.D. Pa. 2021) .......... 24

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016); .......... 21

*Taha v. Bucks Cnty. Pennsylvania*,
2020 WL 7024238 (E.D. Pa. Nov. 30, 2020) .......... 25

*Ward v. Flagship Credit Acceptance LLC*,
2020 WL 759389 (E.D. Pa. Feb. 13, 2020) .......... 24

**Rules**

Fed. R. Civ. P. 23(e) .......... *passim*

Fed. R. Civ. P. 23(g) .......... 6, 15

# INTRODUCTION

Both Callery's Counsel and HOP all but concede that their collusive class action settlement is both procedurally and substantively defective.[1] Callery's Counsel left many of Appellants' central arguments entirely unanswered and offered only half-hearted defenses to the remainder. HOP did not submit a brief at all.

Most notably, Callery's Counsel do not dispute that the District Court triggered the Agreement's poison pill and voided the settlement on its own terms. This alone requires reversal. Callery's Counsel also neglected fatal errors regarding comity, Rule 23(g) authority, *Callery*'s first-filed status, structural settlement conflicts, and ascertainability and manageability.

Moreover, Callery's Counsel failed to offer any plausible interpretation of the *Melville* ICC Order, provide any authority permitting the District Court's post-notice modification of the Agreement, or rebut the many facts establishing that the Order rests on erroneous findings concerning collusion, adequacy of counsel, and HOP's financial condition.

For the limited issues Callery's Counsel dispute, their responses are cursory and unconvincing. At bottom, the record shows that this class action settlement is rife with procedural and substantive unfairness, legal error, and a lack of meaningful adversarial testing. The District Court approved the settlement without addressing

[1] This reply incorporates the same definitions from Appellants' opening brief.

key arguments, applied incorrect legal standards, and overlooked critical record evidence. Appellees' failure to meaningfully defend those rulings reinforces what the record already shows: the Order cannot stand.

## ARGUMENT

### I. HOP and Callery's Counsel Do Not Dispute That the District Court Triggered the Agreement's Poison Pill

The Agreement contains a self-executing poison pill. When triggered, the Agreement "shall have no further force and effect with respect to the Parties or the Settlement Class Members, . . . and any order or judgment entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*." Agreement § 17.14 [A-156]. Two different events can trigger the poison pill: (1) "this Agreement is not approved by the Court in substantially its present form," or (2) "any Objection to the Settlement is sustained." *Id.* Here, both circumstances occurred. Appellants' Br. ("Br.") at 37–38.

Callery's Counsel do not dispute this. They also do not dispute that "the District Court never addressed Appellants' arguments regarding Section 17.14." Br. at 38. The Agreement "is a binding and enforceable contract under general principles of contract interpretation[.]" *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir. 2010); *see also* Br. at 37. Triggering Section 17.14 means this Court must reverse the District Court's Order.

## II. The Settlement Violated Another Federal Court's Order

### A. *Neither HOP Nor Callery's Counsel Present a Plausible Interpretation of the* Melville *Order*

The *Melville* court appointed the undersigned as Interim Class Counsel because "it would protect the putative classes in *Melville* and *Mullaney* to appoint interim class counsel, as it ensures that they will be adequately represented in any settlement involving *Callery*." [A-77]. The *Melville* court later clarified that its ICC Order meant "that the *Melville* and *Mullaney* plaintiffs would participate in any settlement that attempted to extinguish their claims," and that "any further settlement negotiations would involve [*Melville* ICC] if the settlement attempted to resolve claims on their behalf." [A-263–64, 274].

Nonetheless, the *Callery* parties excluded *Melville* ICC from settlement discussions and negotiated a collusive, low-ball settlement purporting to resolve not just *Callery*, but also *Melville*. More troubling, the parties misled *Melville* ICC to conceal their collusive settlement. [A-548] (email from HOP's counsel falsely stating "we have not excluded [*Melville* ICC] from any settlement talks").[2]

No reasonable interpretation of the ICC Order would permit the collusive reverse auction settlement here. Br. at 23–24. Instead, Callery's Counsel wrongly

---

[2] Appellants appreciate the seriousness of accusing Appellees of dishonesty. But the record is indisputable. Indeed, neither Appellee contests that they "both falsely told *Melville* ICC that global settlement discussions were continuing." Br. at 12.

claim that the *Melville* court itself determined the ICC Order was not violated. Appellees' Br. ("Opp'n") at 13. Not so.

After learning of the *Callery* settlement, *Melville* ICC sought sanctions against HOP. The *Melville* court "decline[d] to rule on Plaintiffs' request for sanctions," [A-274], and instead instructed *Melville* ICC "to challenge the fairness of the *Callery* settlement" and "to focus on contesting its validity before the judge in *Callery*," [A-273]. Far from endorsing the *Callery* parties' conduct, the *Melville* court emphasized that "it does not go unnoticed by the Court that HOP's actions may have violated the spirit of the Court's Interim Class Counsel order, if not its explicit terms." [A-274].[3]

The District Court similarly erred in concluding that it was proper for the *Callery* parties to exclude *Melville* ICC from settlement negotiations. [A-33–34]. The District Court never articulated an interpretation of the ICC Order that would permit such conduct, nor explained why the *Melville* court's interpretation should be discarded. Indeed, the District Court did not address Appellants' argument that the ICC Order would be rendered meaningless if *Melville* ICC could be excluded from a settlement of *Melville*'s claims.

[3] The cases cited by Callery's Counsel to claim that the ICC Order did not reach their conduct are inapposite. *Grider v. Keystone Health Plan Ctr., Inc.*, 500 F.3d 322 (3d Cir. 2007) and *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091 (9th Cir. 2008) concern a court's authority under the All Writs Act, which is not the subject of this appeal.

The ICC Order barred settlement negotiations occurring without *Melville* ICC, and this Court should reverse the District Court's Order.

### *B. The District Court Advanced a New and Improper Rule that Enables Courts to Ignore Other Courts' Rule 23 Orders*

The District Court claimed it did not have to follow "an Order entered in a case separate from this one, in an entirely different district[.]" [A-34]. Callery's Counsel likewise argue (without support) that another district court "does not have the authority to issue orders affecting a case before a District Judge in Pennsylvania." Opp'n at 14.

The District Court's position was based on the incorrect proposition that "[o]bjectors cite no case law and make no assertion why this Court must follow" the ICC Order. [A-34]. But Appellants cited controlling Supreme Court precedent requiring district courts to apply principles of comity to other federal courts' Rule 23 orders. *See Smith v. Bayer Corp.*, 564 U.S. 299, 317 (2011); *see also* Br. at 24.[4]

The new rule advanced by the District Court and Callery's Counsel significantly undermines Rule 23—orders issued in one District would not bind

---

[4] The District Court also errantly referred to *Callery* as "first-filed" despite the *Melville* order to the contrary. Br. at 4, 9, 24 (citing [A-34]). Callery's Counsel repeat the incorrect assertion that *Callery* was first filed but do not address the *Melville* court's contrary holding. *See* Opp'n at 1. The District Court was informed years earlier that the *Melville* court rejected HOP's first-to-file motion. Br. at 24. The District Court and the *Callery* parties cannot disregard the *Melville* ruling, especially when no first-to-file motion was litigated in *Callery*.

courts in another. Indeed, "[i]f this Court adopts the District Court's rule," the *Melville* court would be "free to disregard the Rule 23 rulings in this case because it is 'a case separate from this one, in an entirely different district.'" Br. at 25 n.7 (quoting the Order [A-34]). Appellees did not address this issue.[5]

Indeed, Rule 23(g) vests interim class counsel with exclusive settlement authority. Br. at 25. *Melville* ICC therefore possessed sole authority to authorize any settlement resolving *Melville*'s claims. Callery's Counsel did not counter this point.

Affirming the District Court's Order would encourage parties to second-guess Rule 23 orders from other Districts, dramatically changing class action practice. This Court should not endorse such a change to established Rule 23 practice.

## III. <u>The Settlement Was a Reverse Auction</u>

### *A. The District Court Failed to Weigh Evidence of a Reverse Auction*

Appellants pointed to multiple facts demonstrating that this settlement was the result of a collusive reverse auction, many of which are undisputed:

- Both parties misled *Melville* ICC that global settlement negotiations were ongoing to conceal the concurrent secret bilateral negotiations, Br. at 27 [A-548, A-713–14];

---

[5] District courts regularly enter non-class action orders that bind parties in other districts, including confidentiality orders. Foundational doctrines such as issue and claim preclusion all depend on one district court binding parties appearing before another.

- To maintain a façade of litigation, HOP continued producing discovery in *Melville* after reaching a settlement in principle in *Callery*, Br. at 27 [A-434 ¶ 10];

- Callery's Counsel were party to an outstanding joint global settlement demand when the *Callery* parties executed the bilateral Agreement that sought to extinguish the claims at issue in *Melville*, Br. at 12–13 [A-433 ¶ 6];

- HOP argued in *Melville* that *Melville* ICC could not settle claims of multiple categories of customers without separate counsel, yet took the exact opposite position here, Br. at 27–28 [A-78];

- HOP leveraged Callery's Counsel's compromised position from their sanctionable RICO Filing, which Callery's Counsel admit they withdrew at ***HOP's*** demand, Opp'n at 18;

- *Callery* was placed in the trial pool on an individual basis after Callery's Counsel missed the class certification deadline, meaning a classwide attorney fee was available to Callery's Counsel only through settlement, Br. at 26 [A-24];

- The Agreement provided that the settlement fund would pay HOP's future legal fees, creating the risk that class members would get nothing while the parties' attorneys on both sides walked away with all settlement proceeds, Br. at 5 [A-42];

- The class definition and named plaintiffs were expanded only after signing the Agreement and moving for preliminary approval, Br. at 27 [A-26–27, A-234, A-404].

Callery's Counsel do not dispute any of these facts.[6] Worse, the District Court did not weigh ***any*** of these facts in determining whether the settlement was reached at arm's length as required by Rule 23(e)(2)(B). *See* [A-39]. The District Court

---

[6] Callery's Counsel contest that the RICO Filing is connected to the settlement, Opp'n at 18, but not that it created a risk of sanctions.

devoted only one paragraph to this dispute, erroneously concluding "there is no evidence to support" the allegation of a reverse auction. *Id.* It did not cite the record in analyzing Rule 23(e)(2)(B) or explain why the undisputed evidence did not establish a reverse auction scenario. *See In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) ("[A] district court must make its reasoning and application of the law clear, so that we, as a reviewing court, have a sufficient basis to review for abuse of discretion." (citation omitted)).

Moreover, the District Court did not acknowledge that the *Melville* court had already identified sufficient evidence of collusion that it took the active step to thwart it by appointing interim class counsel. The *Melville* court was expressly animated by a reverse auction threat in *Callery*. [A-77, A-263]. The *Melville* ICC order should have raised a red flag for the District Court, as it is well known that courts are reluctant to appoint interim class counsel even where there are potentially overlapping suits. *See, e.g.*, *Mey v. Patriot Payment Grp., LLC*, 2016 WL 11501481, at *3 (N.D. W. Va. Jan. 5, 2016) (denying interim class counsel motion despite threat of reverse auction). Indeed, courts are especially reluctant to name potential improprieties in ***other*** cases. That the *Melville* court took this step is noteworthy, yet

the District Court did not even acknowledge the ICC Order when determining the settlement was reached at arm's length.[7]

Ignoring the substantial evidence of a reverse auction was an abuse of discretion. It would be one thing to weigh the competing evidence and (wrongly) conclude there was no reverse auction; it was reversible to conclude that "no" such evidence existed.[8]

*B. The District Court's Limited Factual Findings Were Clearly Erroneous*

The District Court erroneously found that global settlement negotiations ceased because Appellants "failed to remain in contact with Judge Welsh." [A-39]. When the *Callery* parties executed their collusive Agreement, a live settlement demand—joined by Callery's Counsel—remained pending in the mediation before Judge Welsh. Br. at 12; [A-433 ¶ 6, A-434 ¶ 9]. Callery's Counsel invent an "impasse" allegedly caused by Appellants but cite no evidence other than their own self-serving declaration. Opp'n at 7. Yet they cannot and do not dispute that they

---

[7] The District Court did discuss the ICC Order elsewhere in its opinion.

[8] Callery's Counsel's citation to *Sorace v. Wells Fargo Bank, N.A.*, 2024 WL 5116797, at *1 (3d Cir. Dec. 16, 2024) (which Callery's Counsel incorrectly labeled as *Hummel*) is inapposite because it dealt with a "frivolous appeal," where the court "considered sanction[s.]" *Id.* at *2. This appeal is well founded. *Larson v. AT & T Mobility LLC*, 687 F.3d 109, 119 n.18 (3d Cir. 2012), is likewise unpersuasive because there, "the retired district judge, who oversaw five months of intense settlement negotiations, specifically dismissed the idea that the Settlement was the product of a reverse auction or collusion." *Id.* Judge Giles, who oversaw the one-day negotiation here, made no such finding.

were jointly a party to a live settlement demand in the mediation before Judge Welsh when they executed the Agreement. Indeed, the evidence shows that, in April 2024, HOP's counsel confirmed in writing that "we have not excluded you from any settlement talks." [A-548]. Thus, the District Court's finding is contradicted by undisputed facts.

*C. Callery's Counsel's Counterarguments Fail*

Callery's Counsel provide three unpersuasive reasons why the settlement purportedly was not collusive.

***First***, Callery's Counsel wrongly claim that the parties "did not strike any deal on fees." Opp'n at 15. But the Agreement required the settlement fund to pay all of ***HOP***'s future legal fees, including from this appeal. [A-42, A-134–35, A-144–45]. In exchange, HOP would not oppose Callery's Counsel's request for over $800,000. *Id.* After attorneys' fees, there plausibly would be very little remaining for class members. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (signs of collusion include "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded" (quotation omitted)). The District Court likewise did not address this fee arrangement when analyzing Rule 23(e)(2)(B).[9]

[9] Callery's Counsel also accuse the undersigned of "refusing to agree to the stay [] so that they could bill hours to the newly filed case and 'catch up' to Class Counsel for the purpose of dividing up any fee which might eventually be awarded." Opp'n



(*Footnote continued on next page*)

***Second***, Callery's Counsel claim *Callery* was the "largest, strongest and first filed class action[.]" Opp'n at 16. This is irrelevant to Rule 23(e)(2)(B) and thrice false. When the Agreement was executed, *Callery* was brought by a capped customer pleading a Pennsylvania class and impermissible "opt-in" nationwide class, [A-55], making it the smallest of the class actions against HOP. It was also a much weaker fraud case based on oral misrepresentations, [A-53–54]; such cases face significant class certification hurdles. *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 190 (3d Cir. 2001) ("[A]s a general rule, an action based substantially on oral rather than written communications is inappropriate for treatment as a class action.") (collecting cases).[10] And the *Melville* court determined that *Callery* was not first filed. [A-72–73].

---

at 6. Such mudslinging is disproved by the record. Callery's Counsel previously admitted that "Class Counsel spent less time on this action than Objectors' Counsel," [A-673] and the District Court chided Callery's Counsel for spending "less than three hours per week on the action." [A-45].

[10] Conversely, every court that had addressed a contested motion for class certification in similar residential energy cases with the *Melville* theory of liability has certified the class. *See Mirkin v. XOOM Energy, LLC*, 2023 WL 5622099 (E.D.N.Y. Aug. 31, 2023); *Claridge v. N. Am. Power & Gas, LLC*, 2016 WL 7009062 (S.D.N.Y. Nov. 30, 2016); *Bell v. Gateway Energy Servs. Corp.*, No. 31168/2018, NYSCEF No. 152 (N.Y. Sup. Ct. Feb. 25, 2021); *BLT Steak LLC v. Liberty Power Corp, LLC*, No. 151293/2013, NYSCEF No. 376 (N.Y. Sup. Ct. Aug. 14, 2020); *Roberts v. Verde Energy, USA, Inc.*, 2019 WL 1276501 (Conn. Sup. Ct. Feb. 1, 2019).

***Third***, Callery's Counsel note the Agreement is "an all cash settlement, with no coupons, vouchers or gift cards." Opp'n at 15. This too is irrelevant, and Callery's Counsel provide no support for why this rebuts the ample evidence of collusion.

Because the District Court overlooked substantial evidence of collusion and made clearly erroneous findings, the Order should be reversed.

## IV. The District Court Improperly Presumed Callery's Counsel's Adequacy

### *A. The District Court Applied an Incorrect Legal Standard*

The District Court improperly presumed adequacy of counsel. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 791 (3d Cir. 1995). This was reversible error. *See In re Cmty. Bank of N. Va.*, 622 F.3d 275, 315 (3d Cir. 2010); *see also* Br. at 28–30. Callery's Counsel's contrary arguments fall flat.

First, Callery's Counsel argue that "[t]he District Court applied the correct legal standards in analyzing adequacy of counsel, finding no conflict of interest." Opp'n at 17. It is unclear whether Callery's Counsel are arguing the District Court did not presume adequacy or that the District Court was correct to apply a presumption of adequacy. Both are incorrect.

The District Court expressly relied on a presumption of adequacy at least five times. *See* Br. at 28–30. And it is beyond debate that courts may not presume Rule 23 adequacy. *See id.*

It is thus unsurprising that Callery's Counsel's attempts to distinguish Appellants' cases fail. They claim that *General Motors* "merely cautioned" district courts to "monitor the negotiation process[.]" Opp'n at 17 (quoting 55 F.3d at 791). This selective quotation omits language in the same sentence that disproves Callery's Counsel's position: "Although a judge ***cannot presume*** that the putative class counsel actively represented the absentees' interests, the court can still monitor the negotiation process itself . . . ." 55 F.3d at 791 (emphasis added). Indeed, *General Motors* clarifies that "the party advocating certification bears the burden of proving the appropriateness of class treatment[.]" *Id.* at 792; *contra* Order [A-18–19] (erroneously holding that Callery's Counsel did not have the burden to prove adequacy).

Callery's Counsel then claim that *Community Bank of Northern Virginia* "has nothing to do with this case" because it involved timeliness issues. Opp'n at 18. But under *Community Bank*, a court abuses its discretion when it "applie[s] an incorrect legal standard" for whether "class counsel are adequate representatives for the class[.]" 622 F.3d at 315; *see also* Br. at 30. Such is the case here.

Callery's Counsel make no attempt to distinguish the four additional cases Appellants cited; all confirm that it was reversible error for the District Court to presume adequacy. *See* Br. at 28–30. Callery's Counsel likewise do not defend the

1984 district court case the District Court relied on to presume adequacy, *see* [A-19], or cite a single case in the decades since that approved such a presumption.

Second, Callery's Counsel suggest that any improper presumption was cured by the fairness hearing and opinion. Opp'n at 18. The fairness hearing was mandatory under Rule 23(e)(2); it does not cure the application of an improper legal standard. And the District Court's opinion, which repeatedly incorporates the improper standard, aggravates rather than sanitizes its error.

*B. Callery's Counsel Are Inadequate*

Appellants provided ample evidence showing that the District Court abused its discretion in presuming and finding Callery's Counsel adequate. Callery's Counsel do not address the list of disqualifying litigation blunders identified in Appellants' opening brief. Br. at 31–32. Instead, Callery's Counsel make three unpersuasive arguments.

First, they wrongly assert that Appellants "have not even tried to show" any error with the "District Court's factual findings on adequacy." Opp'n at 19. Not so. Appellants presented a bullet list with eleven facts demonstrating the District Court's findings were clearly erroneous. Br. at 31–32. Callery's Counsel did not (and cannot) dispute many of the facts showing their inadequacy.

Second, Callery's Counsel argue that defense-side experience does not render them inadequate. True, but irrelevant. It is undisputed that Callery's Counsel have

"zero prior experience helming a class action, negotiating a class settlement, or readying such a case for trial." Br. at 30 (citing [A-429]). This directly implicates Rule 23(g)(1)(A)(ii)'s requirement that courts consider "counsel's experience in handling class actions[.]"

Third, Callery's Counsel claim no inherent conflicts with the Class. However, the RICO Filing subjected Callery's Counsel to sanctions and created a perverse incentive for Callery's Counsel to protect themselves over the class. Callery's Counsel argue it is "fantasy" to connect the RICO Filing to settlement efforts, Opp'n at 18, but they do not dispute the RICO Filing violated the *Callery* protective order.[11] That was sanctionable and created an inherent conflict.

The District Court incorrectly found that Appellants "do not provide any legal or factual support for their claim that the RICO filing created a 'strong incentive . . . to seek a quick exit.'" [A-27]. This overlooked the multiple cases Appellants cited showing the various potential sanctions stemming from the RICO Filing, including disqualification as class counsel and/or class representative, contempt, and financial penalties. [A-399–400]. HOP leveraged this risk for a favorable settlement. [A-434 ¶ 7].

---

[11] Callery's Counsel's reckless disregard of confidential information persists in this appeal. Their opening brief publicly disclosed previously designated confidential information numerous times that was required to be filed under seal. Although Appellants alerted Callery's Counsel of this error, they have taken no action to correct it as of filing this reply.

Callery's Counsel had an additional strong incentive to seek a quick class settlement because they missed the certification deadline, resulting in this case going into the trial pool without a class. *See* [A-24]. The District Court acknowledged this but held that the "failure to file preliminary class certification on its own is not sufficient to show inadequacy." *Id.* This misses the point. It glosses over the evidence of inadequacy in totality, instead analyzing one fact "on its own." It also does not account for the inherent conflict between the class's goal of maximum recovery and Callery's Counsel's pursuit of a classwide fee (unavailable absent settlement after the case was in the individual trial pool).[12]

Callery's Counsel could not and did not adequately represent the class.

## V. Post-Notice Modifications Violated Due Process and Rule 23(e)

The Agreement required the settlement fund to pay all of HOP's future legal fees before paying Class Members. Appellants objected to this provision. The District Court modified the Agreement to excise this provision but otherwise approved it.

---

[12] Moreover, the settlement structure created an inherent conflict. Variable and promotional variable claims are substantially more valuable claims than capped claims, creating "disparate interests" requiring separate counsel. *See* Br. at 32–33 (quoting *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 857 (1999) and *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 251 (2d Cir. 2011)). Callery's Counsel do not respond to this structural defect.

This Court and every other federal appellate court to consider the issue have held that a district court lacks the authority to materially modify a class action settlement agreement at the final approval stage. Br. at 33–36. Callery's Counsel claim the law says otherwise without citing a single case or distinguishing any of the fifteen cases Appellants cited. Opp'n at 21.

Callery's Counsel instead argue the modification passes muster because it makes more funds available to the class.[13] Appellants are not aware of any authority that provides such a "class benefit" exception to the rule that a court cannot materially modify a class action settlement agreement, and Callery's Counsel cite none. Indeed, in *Brooks v. Ga. State Bd. of Elections*, which Appellants cited, the court rejected this exception. *See* 59 F.3d 1114, 1120 (11th Cir. 1995) ("[W]e are convinced that neither this court nor the district court has the power to modify the . . . proposed settlement agreement in order to afford meaningful relief[.]").

Moreover, this proposed exception is unmanageable and violates class members' due process rights. If it were adopted, courts would have line-item veto authority for modifications that "benefit" the class. But, as here, whether a

[13] Callery's Counsel claim "Class Counsel persuaded HOP to waive this provision." Opp'n at 21. Untrue. Callery's Counsel signed the Agreement authorizing the offending provision. Appellants objected to the provision, resulting in its exclusion. [A-42] ("Objectors argue the settlement is inadequate because it pays the legal fees of HOP Energy and the risk of the diminishing settlement is borne by the class and not class counsel. Objectors' concerns here are legitimate.").

modification benefits the class will often be a subjective question, warranting notice and an opportunity to opt out or object. Here, the modification is not exclusively a benefit to the class for at least two reasons.

First, this modification is incompatible with Section 17.14, which prohibits such modifications. *See supra* § I. Section 17.14 protects class members because if any portion of the Agreement is deemed unfair, the whole Agreement falls. Class members would need to weigh the benefit of additional funds against losing the protection of the poison pill.

Second, class members may find it material that the District Court concluded that their supposed advocates agreed to a deal in which the attorneys for both sides could walk away with an ever-increasing portion of the settlement fund. Class members may rightfully not trust these counsel to represent them.

There is no "class benefit" exception to the rule prohibiting material modifications of a class action settlement agreement at final approval. This Court should not be the only appellate court to create one.[14]

[14] Callery's Counsel did not respond to any of the four additional reasons Appellants provided for why the District Court's modification of the Agreement requires reversal. Br. at 35–36.

## VI. Callery's Counsel Refused to Exclude Uninjured Capped Price Customers from the Class

Callery's Counsel repeatedly stated there were uninjured ***capped*** customers. Indeed, their liability theory compels that result. Nevertheless, they refused to remove those uninjured customers from the class. The District Court therefore should have rejected the settlement.[15] Instead, the District Court erroneously conflated different categories of customers, finding there are no uninjured class members because ***fixed*** and ***COD*** customers were excluded. [A-31–32]; *see also* Br. at 42.

The District Court only addressed the question of uninjured ***capped*** customers in Footnote 121, [A-32], citing the final approval hearing transcript where Callery's Counsel stated, "we can't prove . . . that every single [capped customer] had a financial hit," [A-921 at 11–19]. In other words, the District Court's finding is contradicted by its own record citation. Br. at 42. Rather than show how the District Court's citations or analysis plausibly support its finding that the class does not include uninjured capped customers, Callery's Counsel make two unavailing arguments.

[15] Callery's Counsel do not dispute that including uninjured class members in the settlement class would require reversal. Instead, they posit that no uninjured class members exist—effectively conceding that if Appellants are correct on the facts, reversal must follow.

First, Callery's Counsel argue that their repeated statements regarding uninjured capped customers, *see* Br. at 39, were taken out of context. They claim those statements were made in the remand dispute to "demand[] proof from the Defendant, which had the burden of proving jurisdiction, regarding how much damages were." Opp'n at 22. The strategic motivation for those statements does not render them false and Callery's Counsel offer no alternative interpretation. Nor could they. Their theory of liability is that customers paid the capped price instead of the prevailing retail price when prices fell. But when prices rose, customers appropriately paid the capped price and were not injured. Capped customers who made purchases only during times of rising prices by definition did not suffer injury.

Moreover, Callery's Counsel's argument is contradicted by similar statements throughout the litigation. *See* Br. at 40–41. In both final approval briefing and at the fairness hearing, Callery's Counsel admitted they did not even attempt to determine whether all capped customers were damaged. *Id.*

Given these admissions, and because Callery's Counsel's liability theory compels the existence of uninjured capped customers, Callery's Counsel had the burden of showing that they could exclude such customers from the class. *See Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 158 (3d Cir. 2023). They refused.

Second, Callery's Counsel argue that capped customers were injured merely by being exposed to HOP's scheme, writing that "[e]very class member was

deceived by this scheme in every heating oil purchasing decision[.]" Opp'n at 23. This argument fails. For one thing, Callery's Counsel have no basis to conclude that every class member was deceived. *See Dutch v. IKEA US Retail LLC*, 343 F.R.D. 296, 308 (E.D. Pa. 2022) ("[O]ur Court of Appeals has repeatedly denied class certification when purported class members raise claims with a causation or reliance requirement that results in individual inquiries.") (collecting cases). Indeed, they cite no record evidence in support of this claim.

More broadly, deception alone is insufficient to establish Article III injury. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."); *see also Kamal v. J. Crew Grp., Inc.*, 918 F.3d 102, 117 (3d Cir. 2019). Indeed, Pennsylvania consumer protection law recognizes the difference between deception and injury. "Under the [Pennsylvania consumer protection law], a plaintiff must also show that as a result of the defendant's fraudulent or deceptive conduct, he or she suffered an 'ascertainable loss of money or property.'" *Lewis v. Ford Motor Co.*, 263 F.R.D. 252, 263 (W.D. Pa. 2009) (quotation omitted). Accordingly, Callery's Counsel's dubious claim that "[e]very class member was deceived" is insufficient to establish that every capped customer had an Article III injury.[16]

---

[16] Appellants also identified ascertainability and manageability defects stemming from Callery's Counsel refusal to investigate whether there were uninjured capped customers. Br. at 41. Callery's Counsel ignore these concerns. Appellants raised the



(*Footnote continued on next page*)

## VII. Class Notice Was Defective

Notice was insufficient under Rule 23(e) and due process because it contained material misstatements and omissions. Callery's Counsel pose two unavailing responses.

First, Callery's Counsel argue that misstatements and omissions Appellants identified are immaterial ***but do not dispute their falsity***. Opp'n at 19–20. Appellants identified the following misrepresentations and omissions in the Notice:

- Its method of calculating class member recovery is mathematically incompatible with the Agreement. Br. at 44.
- It falsely informed class members that compensation would be based in part on "the price(s) charged by HOP[.]" Br. at 45.[17]
- It did not disclose amounts class members were likely to receive. Br. at 45–46.
- It omitted the distribution of consumption within each tier of recovery. Br. at 44–45.
- It did not include information about HOP's supposed financial distress. Br. at 46.

---

same objection below, yet Callery's Counsel did not address it in the District Court proceedings either. [A-846] (Callery's Counsel at the final approval hearing: "Ascertainability, I'm sorry I didn't brief it.").

[17] Nor do Callery's Counsel dispute that the District Court's finding that it was "accurate" to tell class members their recovery would be based in part on the prices HOP charged was a clear error of fact. Br. at 45.

These misstatements and omissions are material because they relate to class member compensation and influence class members' abilities "to make informed decisions on whether they should take steps to protect their rights[.]" *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013). Callery's Counsel cite no case holding that such misrepresentations are immaterial. Appellants are aware of none.

Second, citing no authority, Callery's Counsel argue the misrepresentations are cured because the Agreement was posted on the settlement website.[18] This new rule would render notice superfluous if there is a settlement website. Worse, it would open the door to the precise type of gamesmanship present here, where parties tell class members one thing and post something entirely different on the website.

The undisputed defects in the Notice render it insufficient under Rule 23(e) and due process.

## VIII. HOP's Claimed Inability to Pay Does Not Relieve Callery's Counsel of Their Obligation to Prove the Settlement's Fairness

Appellants described how courts in this Circuit and nationwide routinely reject class settlements where parties, as here, fail to provide information "as to the

---

[18] Even if taking the settlement website into account, it falsely represents that class members' "pro-rata share" of the fund is based in part on "the price(s) charged by HOP" for heating oil deliveries. http://heatingoilclassaction.com/frequently-asked-questions.aspx, Question No. 5. Nor does the website disclose the consumption distribution within the recovery tiers, nor any information about HOP's claimed financial distress.

class members' potential range of recovery." Br. at 47–50 (quoting *In re Nat'l Football League Players' Concussion Inj. Litig.*, 961 F. Supp. 2d 708, 715 (E.D. Pa. 2014) (collecting cases)); Fed. R. Civ. P. 23(e)(1)(A). Callery's Counsel do not dispute they did not provide the amount of alleged overcharges in and across the settlement's tiers. Opp'n at 25–26. Instead, they claim that the "range of recovery was not material to the settlement agreement" and therefore the District Court "did not need detailed damages calculations to conduct a fairness inquiry." *Id.*

Courts in this Circuit are required to assess the "range of reasonableness of the settlement fund in light of the best possible recovery." *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975). This rule stands even when defendants claim an inability to pay a greater amount. *See, e.g.*, *Ward v. Flagship Credit Acceptance LLC*, 2020 WL 759389, at *17–21 (E.D. Pa. Feb. 13, 2020) (rejecting $4 million settlement despite inability to pay claim because settlement provided only "de minimis" recovery); *see also Bennett v. Schnader Harrison Segal & Lewis LLP*, 2026 WL 202548, at *6–7 (E.D. Pa. Jan. 22, 2026) (evaluating all *Girsh* factors for settlement with claimed inability to pay and approving where recovery was 68% of amount estimated recoverable at trial); *Sourovelis v. City of Philadelphia*, 515 F. Supp. 3d 321, 338 (E.D. Pa. 2021) (same with recovery at "75% to 100% of the value" of claims); *Abramson v. Agentra, LLC*, 2021 WL 3370057, at *13–14 (W.D. Pa. Aug. 3, 2021) (same with recovery "within the range of other [] settlements approved across the

country”); *Taha v. Bucks Cnty. Pa.*, 2020 WL 7024238, at *7 (E.D. Pa. Nov. 30, 2020) (same with recovery at 60% of jury award).

Appellees cite no authority for their proposed new rule that courts need not evaluate a settlement’s fairness in light of the best possible recovery whenever a defendant claims financial trouble. This Court should not endorse this new rule.

Moreover, Callery’s Counsel’s inability-to-pay justification rests on an unsubstantiated assumption of zero recovery in bankruptcy. Callery’s Counsel did not provide any analysis of potential bankruptcy outcomes. They failed to address the specific tools available in bankruptcy that could increase the class’s recovery. Br. at 53–54. Because Callery’s Counsel claimed (implausibly) that class members’ choice was between the Agreement and bankruptcy, the District Court needed a sufficient showing of likely outcomes in bankruptcy proceedings. Without such an analysis, the District Court lacked sufficient information to weigh the Agreement’s fairness.

## IX. The District Court Failed to Weigh Evidence Regarding HOP’s Ability to Pay

A core factual dispute is HOP’s ability to pay a larger settlement. Appellants presented substantial evidence, including an expert report, demonstrating that HOP would go to great lengths to avoid bankruptcy (including paying a substantially larger settlement), that HOP could withstand a larger settlement, and that the information HOP provided to establish its inability to pay was insufficient and stale.

Appellants also demonstrated that class members could potentially receive more in bankruptcy than the minimal amounts from this settlement. The District Court did not address ***any*** of this evidence or argument presented or make a factual determination by a preponderance of the evidence.

In response, Callery's Counsel argue that: (1) the District Court did not need to state expressly that its findings were made by a preponderance of the evidence; (2) Appellants provided no evidence to contradict Callery's expert; and (3) HOP's secured lender would prefer to put HOP into bankruptcy than pay into a settlement. Each argument fails.

First, Appellants never argued the District Court failed to use "magic language." *See* Opp'n at 24. Instead, Appellants established that the District Court used an improper standard. Before certifying a class, a court must "resolve factual disputes by a preponderance of the evidence." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008), as amended (Jan. 16, 2009). HOP's ability to pay is such a factual dispute. Instead, the District Court based its conclusions on whether the parties' beliefs were reasonable or legitimate. *See, e.g.*, [A-41–42] ("The Court is satisfied that HOP Energy's financial situation ***reasonably supports*** Plaintiffs [*sic*] assertions that HOP Energy could not withstand a greater judgment . . . ."); [A-41] (parties' representations that settlement resulted from "***legitimate concerns*** about ability to withstand a greater judgment.").

These conclusions are insufficient. Rule 23 requires claims about a defendant's inability to pay to be proved by a preponderance of the evidence. The District Court did not find that HOP could not pay more; it only found that Plaintiffs reasonably believed HOP's claims.

Second, Callery's Counsel incorrectly assert their expert's conclusions were not rebutted by evidence. Appellants provided substantial evidence, including HOP's management's statements, contradictory statements within Callery's expert report, Appellants' own expert report, Callery's Counsel's sworn statements, and public and non-public information about HOP's financial condition. Br. at 50–52.[19]

Given the substantial body of evidence showing HOP's ability to pay more, the District Court should have weighed such evidence and presented its analysis. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 325 (3d Cir. 2019) (courts must make Rule 23 determinations sufficiently clear). The Order lacks any such analysis.

Third, Callery's Counsel argue that HOP's secured lender did not want to pay additional money toward a settlement. No surprise. But Appellants' expert opined it would be unlikely for HOP's lender to force it into bankruptcy rather than paying more in a settlement. Br. at 16; [A-559]. The District Court did not acknowledge or

---

[19] Moreover, Appellants sought additional discovery regarding HOP's financial situation. Br. at 52. HOP refused to provide it and the District Court ignored the request.

weigh this evidence. Appellants also described several tools available in bankruptcy to recover on behalf of the class. Br. at 54 n.14. The District Court and Callery's Counsel did not consider any of this and instead baselessly assumed class members would recover nothing in bankruptcy.

Because HOP's ability to pay was central to the settlement, this Court should remand to the District Court to weigh all the evidence and present a reasoned analysis of its findings.

## CONCLUSION

Appellants respectfully request this Court reverse the final approval order.

Dated: May 14, 2026

Respectfully submitted,

/s/ Daniel J. Brenner
Daniel J. Brenner
**WITTELS MCINTURFF PALIKOVIC**
J. Burkett McInturff
305 Broadway, 7th Floor
New York, New York 10007
Telephone: (914) 775-8862
djb@wittelslaw.com
jbm@wittelslaw.com

**SHUB & JOHNS LLC**
Jonathan Shub
Samantha E. Holbrook
Four Tower Bridge
200 Barr Harbor Drive, Suite 400
Conshohocken, PA 19428
Telephone: (610) 477-8380
jshub@shublawyers.com
sholbrook@shublawyers.com

**CERTIFICATE OF COMPLIANCE**

I hereby certify that: (1) pursuant to Local Rule 28.3(d), I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit; (2) this document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(ii) because it contains 6,494 words, as determined by the word-count function of Microsoft Word, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f); (3) that this document complies with the typeface requirement of Federal Rule of Appellate Procedure 32(a)(5)(A) because it was typed in a proportionally spaced typeface using Times New Roman 14-point font; (4) in accordance with Local Rule 31.1(c), the text of the electronic brief is identical to the text in the paper copies; (5) pursuant to Local Rule 31.1(c), the electronic copy of this brief has been scanned for viruses using Sophos Premium version 10.11.5 and no virus has been detected.

Dated: May 14, 2026

/s/ Daniel J. Brenner
Daniel J. Brenner

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2026, the foregoing was filed via the electronic CM/ECF system of the United States Court of Appeals for the Third Circuit, which will send a notification of such filing to all counsel of record.

Dated: May 14, 2026

/s/ Daniel J. Brenner
Daniel J. Brenner